BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
JONATHAN F. OLIN
Deputy Assistant Attorney General
MICHAEL S. BLUME
Director, Consumer Protection Branch
ANDREW E. CLARK
Assistant Director
JACQUELINE BLAESI-FREED
jacqueline.m.blaesi-freed@usdoj.gov
United States Department of Justice
Consumer Protection Branch, Civil Division
P.O. Box 386
Washington, DC  20044
Telephone (202) 353-2809
Facsimile (202) 514-8742

*Attorneys for United States*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| United States of America, | Case No.: 3:16-cv-3474 |
| Plaintiff, | **COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES AND OTHER RELIEF** |
| v. | |
| InMobi Pte Ltd., a private limited company, | |
| Defendant. | |

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges that:

1.  Plaintiff brings this action under Sections 5(a)(1), 5(m)(1)(A), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and

56(a), and Sections 1303(c) and 1306(d) of the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. §§ 6502(c) and 6505(d), to obtain monetary civil penalties, a permanent injunction, and other equitable relief for Defendant's violations of Section 5 of the FTC Act and the Commission's Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), 16 C.F.R. Part 312.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 56(a).

3.      Venue is proper in the Northern District of California under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) – (d) and 1395(a).

## INTRADISTRICT ASSIGNMENT

4.      Defendant markets its products throughout the United States, including throughout the county of San Francisco.  Defendant's wholly owned United States subsidiary has its primary place of business in the county of San Francisco.

## SECTION FIVE OF THE FTC ACT

5.      Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair and deceptive acts or practices in or affecting commerce.

## THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT RULE

6.      Congress enacted COPPA in 1998 to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet Web sites and online services.  COPPA directed the Commission to promulgate a rule implementing COPPA.  The Commission promulgated the Children's Online Privacy Protection Rule, 16 C.F.R. Part 312, on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553.  The Rule went into effect on April 21, 2000.  Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**DEFENDANT**

7.      Defendant InMobi Pte Ltd. is a Singaporean private limited company with its headquarters at 30 Cecil Street, #19-08, Prudential Tower, Singapore 049712, and transacts or has transacted business in the Northern District of California.  At all times material to this Complaint, acting alone or in concert with others, InMobi Pte Ltd. purposefully directed its activities to the United States by marketing and providing online services throughout the United States. Specifically, InMobi Pte Ltd. operates a mobile advertising network.

8.      The FTC's claims against Defendant arise from Defendant's acts or practices in the United States.

**COMMERCE**

9.      At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 and 5 of the FTC Act, 15 U.S.C. § 44; 45.

**DEFENDANT'S BUSINESS PRACTICES**

10.      Defendant provides an advertising platform for mobile application developers and advertisers.  By integrating Defendant's software development kit ("InMobi SDK"), Android and iOS application developers can monetize their applications by allowing third party advertisers to advertise to consumers through various ad formats, such as banner ads, interstitial ads, and native ads.  Advertisers, in turn, can target consumers across all of the mobile applications that have integrated the InMobi SDK.

11.      Defendant describes itself as the "world's largest independent mobile advertising company."  In February 2015, Defendant reported its advertising network had reached over one billion unique mobile devices, with 19% of those devices located in North America, and had served 6 billion ad requests per day.

**DEFENDANT'S GEO-TARGETING PRODUCTS**

12.      Defendant offers several geo-targeting products through which advertisers can target consumers based on their physical location: the "Now" targeting suite, the "Conditional" targeting suite, and the "Psychographic" targeting suite.

13.     The "Now" suite allows advertisers to target consumers based on their current location.  For example, an advertiser may target consumers when they visit a particular retailer.

14.     The "Conditional" suite allows advertisers to target consumers who meet certain conditions, such as visiting a certain location at a particular time of day, or visiting a certain location more than once.  For example, an advertiser may target consumers who visit airports on Monday mornings and Thursday evenings.

15.     The "Psychographic" suite allows advertisers to target consumers based on their location history for up to the last two months.  For example, an advertiser may target consumers who live in affluent neighborhoods and, during the last two-month period, have visited luxury auto dealerships.

## ANDROID AND iOS LOCATION SETTINGS

16.     The Android and iOS operating systems each provide application developers with application programming interfaces ("APIs") that provide the application with the consumer's current location.  In order to access these location APIs, both operating systems require application developers to obtain the consumer's consent through "permissions" – notifications that inform the consumer about the sensitive information (*e.g.*, the consumer's location or contacts) or sensitive device functionality (*e.g.*, the device's camera or microphone) that the application would like to access.

17.     On Android 5.1 and earlier versions, the operating system protects the location API through two permissions: Access Coarse Location (accurate up to 2000 meters) and Access Fine Location (accurate up to the precise latitude/longitude coordinates).  When installing an application, the consumer is prompted with any location permissions that the application has requested.  If the consumer installs the application, the InMobi SDK can access any of the device resources, including location, to which the application has requested access.  A consumer may decide not to install an application based on the fact it has requested access to the consumer's coarse or fine location.

18.     In addition to these install-time permissions, Android provides the consumer with a system setting to restrict global access to the location API.  Through this setting, the consumer

can prevent all applications on the device from accessing the location API. A consumer may decide to restrict access to the location API when, for example, visiting a sensitive location. If the consumer restricts access using this setting, the InMobi SDK would no longer have access to the location API.

19.    On iOS, the operating system protects the location API through a permission dialog box that prompts the consumer the first time that an application attempts to access the consumer's location. If the consumer accepts the prompt, the application can then access the consumer's location and pass it to the InMobi SDK. A consumer may decide not to accept the prompt, in which case the application will not have access to the location API.

20.    In addition to this run-time permission, iOS provides settings through which the consumer can later restrict access to the location API both on a global and application-by-application basis. A consumer may decide to restrict access to the location API when, for example, visiting a sensitive location. If the consumer restricts access using these settings, the InMobi SDK would no longer have access to the location API.

21.    When a consumer allows an application to access the location API, Defendant collects the consumer's location in order to serve targeted advertising via the geo-targeting product suites described in Paragraphs 12-15.

## DEFENDANT'S USE OF WIFI NETWORK INFORMATION TO GEO-TARGET CONSUMERS

22.    Even if the consumer had restricted an application's access to the location API, until December 2015, Defendant still tracked the consumer's location and, in many instances, served geo-targeted ads, by collecting information about the WiFi networks that the consumer's device connected to or that were in-range of the consumer's device.

23.    On Android, Defendant collects WiFi network information from the device if the application developer has included either of two WiFi-related permissions: Access WiFi State and Change WiFi State. If the application developer has included the Access WiFi State permission, Defendant collects information about each network to which the consumer's device connects, including the ESSID (network name), BSSID (a unique identifier), and signal strength. If the

application developer has included the Change WiFi State permission, Defendant collects information about each network that is in range of the consumer's device (whether or not the consumer actually connects to the network), including the BSSID and signal strength. Although Android presents consumers with these WiFi-related permissions during application installation, consumers would have no reason to know that this information would be used to track location.

24. On iOS, Defendant uses an API known as CaptiveNetwork to collect the BSSID of each WiFi network to which a consumer's device connects. According to the iOS developer documentation, the CaptiveNetwork API is intended to allow an application to "assum[e] responsibility for authenticating with [captive] networks," such as the pay-to-use networks at hotels. Although the InMobi SDK does not facilitate authentication with captive networks, Defendant nonetheless uses the CaptiveNetwork API to collect BSSIDs through any iOS application that integrates the InMobi SDK. iOS does not present a permission dialog box indicating that an application is accessing this API, and the consumer has no means to deny an application access to this information.

25. In any instance where the location API is accessible (*i.e.*, the application developer has included the location permission and the consumer has allowed the application's access to the location API), Defendant simultaneously collects latitude/longitude coordinates alongside the BSSID and other network information described in Paragraphs 23-24. Defendant correlates these two sets of information in order to create its own geocoder database through which it can match specific WiFi networks to specific locations.

26. Until December 2015, even in those instances where the location API was inaccessible (*i.e.*, the application developer had not included the location permission or the consumer had restricted the application's access to the location API), Defendant still collected the WiFi network information described in Paragraphs 23-24, fed the information into its geocoder database, and inferred the consumer's latitude and longitude. Through this method, Defendant could track the consumer's location and serve geo-targeted ads, regardless of the application developer's intent to include geo-targeted ads in the application, and regardless of the consumer's location settings.

27.     In response to the Commission's investigation, Defendant modified its location tracking practices at the end of 2015.  Defendant released a new version of the InMobi SDK in November 2015 and made additional server-side changes in December 2015.  As a result of these modifications, Defendant no longer tracks a consumer's location based on the WiFi network information described in Paragraphs 23-24 unless the Android or iOS location API is accessible to the application integrating the InMobi SDK (*i.e.*, the application developer has included the location permission and the consumer has allowed the application's access to the location API).

**DEFENDANT'S REPRESENTATIONS REGARDING GEO-TARGETING**

28.     Defendant disseminated or caused to be disseminated to Android application developers the following statements in the InMobi SDK integration guide, representing that it tracks the consumer's location and serves geo-targeted ads only if the application developer and the consumer provide access to the Android location API:

To allow InMobi to show Geo targeted ads, you need to add the ACCESS_COURSE_LOCATION [sic] and ACCESS_FINE_LOCATION permissions.

29.     However, as explained in Paragraph 23, providing access to the Android location API was not the only way Defendant tracked the consumer's location and served geo-targeted ads.  Defendant also collects BSSID and other information related to the WiFi network to which a consumer's device is connected or in-range, if the Android application developer has included the Access WiFi State or Change WiFi State permissions.  Through these means, until December 2015, Defendants tracked the consumer's location and serve geo-targeted ads, regardless of whether the application developer had included the Access Coarse Location or Access Fine Location permissions, and regardless of the consumer's location settings.

30.     To iOS application developers, Defendant disseminated or caused to be disseminated the following statements in the InMobi SDK integration guide, representing that it tracks the consumer's location and serves geo-targeted ads only if the application developer and the consumer provide access to the iOS location API:

You can set the user location by using the location methods in the ad request. . .

Passing the location object allows for better targeting, and potentially higher eCPMs [effective cost per thousand impressions].

31.     However, as explained in Paragraph 24, providing access to the iOS location API was not the only way Defendant tracked the consumer's location and served geo-targeted ads. Defendant also collects the BSSID of the WiFi network to which a consumer's device is connected from all iOS applications that have integrated the InMobi SDK.  Through these means, until December 2015, Defendant tracked the consumer's location and served geo-targeted ads, regardless of whether the application developer had passed the location object, and regardless of the consumer's location settings.

32.     Defendant also disseminated or caused to be disseminated to both Android and iOS application developers the following additional statements in the InMobi SDK integration guide:

This [location] parameter is passed to InMobi provided that the user allows it. It should contain the latitude, longitude, and accuracy, separated by commas. This parameter is required if the request is needed to be considered for geo-targeting.

33.     However, as explained in Paragraphs 23-24, providing access to the location APIs was not the only way Defendant tracked the consumer's location and served geo-targeted ads. Defendant also collects BSSID and other information related to the WiFi network to which a consumer's device is connected or in-range.  Through these means, until December 2015, Defendant tracked the consumer's location and served geo-targeted ads, regardless of the application developer's intent to include geo-targeted ads in the application, and regardless of the consumer's location settings.

34.     Through the marketing campaign for their geo-targeted ad products, Defendant has also disseminated or caused to be disseminated the following statements representing that it tracks the consumer's location and serves geo-targeted ads only if the consumer provides opt-in consent:

First, we take in location data on each user, *in the form of user opt-in lat/long signals*.  Then we add real world context to these signals to figure out what places or businesses the user has visited.  Our machine learning algorithms mine for

patterns in this location history to identify what these trends mean about the user, from which we can infer what kind of consumer the user is.  (Emphasis added.)

35.     However, as explained in Paragraphs 23-24, Defendant tracked the consumer's location and served geo-targeted ads even if the consumer had not provided opt-in consent. Defendant collects BSSID and other information related to the WiFi network to which a consumer's device is connected or in-range, and used this information to track the consumer's location and serve geo-targeted ads, regardless of whether the consumer had provided opt-in consent.

36.     Defendant represented in the disclosures described in paragraphs 28, 30, 32, and 34 that it tracked the consumer's location and served geo-targeted ads only if the application developer and the consumer provided access to the location APIs, and the consumer provided opt-in consent.  In fact, Defendant collected and used BSSID and other WiFi network information to track the consumer's location and serve geo-targeted ads regardless of the application developer's intent to include geo-targeted ads, and regardless of the consumer's location settings.

37.     As a result, application developers could not provide accurate information to consumers regarding their applications' privacy practices.   Indeed, numerous application developers that have integrated the InMobi SDK have represented to consumers in their privacy policies that consumers have the ability to control the collection and use of location information through their applications, including through the device location settings.  These application developers had no reason to know that Defendant tracked the consumer's location and served geo-targeted ads regardless of the consumer's location settings.

38.     Defendant's practices undermined consumers' ability to make informed decisions about their location privacy and to control the collection and use of their location information through the thousands of applications that have integrated the InMobi SDK.  Defendant's practices also deprived consumers of the ability to ensure that they installed and used only those applications that would honor their location privacy

1  preferences.

2  **DEFENDANT'S BUSINESS PRACTICES REGARDING COLLECTION OF**

3  **INFORMATION FROM CHILD-DIRECTED APPLICATIONS**

4  39.     For purposes of Paragraphs 39 through 50, and 57 through 65, herein, the terms

5  "child," "collects," "collection," "disclosure," "Internet," "operator," "parent," "personal

6  information," "obtaining verifiable consent," and "Web site or online service directed to

7  children," are defined as those terms are defined in Section 312.2 of the COPPA Rule, 16 C.F.R.

8  § 312.2.

9  40.     The Rule applies to any operator of a commercial Web site or online service

10  directed to children that collects, uses, and/or discloses personal information from children,

11  including an operator of a commercial Web site or online service that has actual knowledge that it

12  is collecting personal information directly from users of another Web site or online service

13  directed to children.  Among other things, the Rule requires operators to meet specific

14  requirements prior to collecting online, using, or disclosing personal information from children,

15  including but not limited to:

16          a.   posting a privacy policy on its Web site or online service providing clear,

17               understandable, and complete notice of its information practices, including what

18               information the operator collects from children online, how it uses such

19               information, its disclosure practices for such information, and other specific

20               disclosures set forth in the Rule;

21          b.   providing clear, understandable, and complete notice of its information practices,

22               including specific disclosures, directly to parents when required by the Rule; and

23          c.   obtaining verifiable parental consent prior to collecting, using, and/or disclosing

24               personal information from children.

25  41.     In order to monetize applications through Defendant's mobile advertising network,

26  application developers must integrate the InMobi SDK and register their application with

27  Defendant.  On or around June 30, 2013, Defendant introduced an option in the registration

28  process through which application developers could indicate to Defendant that the registered

COMPLAINT                                10                       Case No. 3:16-cv-3474

application is directed to children.  The option – next to an unmarked checkbox – read, "My property is specifically directed to children under 13 years of age and/or I have actual knowledge that it has users known to be under 13 years of age."  Since this option became available, thousands of application developers that have integrated the InMobi SDK have indicated to Defendant that their applications are directed to children.

42.     Defendant disseminated or caused to be disseminated the following statements regarding the collection of children's personal information through their Privacy Policy:

### **WHAT ABOUT CHILDREN?**

We do not knowingly collect any personal information about children under the age of 13.  If we become aware that we have collected personal information about a child under the age of 13, that information will be immediately deleted from our database.

43.     In addition, Defendant disseminated or caused to be disseminated the following statements regarding the collection and use of children's personal information through a separate COPPA Policy:

InMobi has always adopted a policy of not knowingly collecting any personal information about children under the age of 13 and if we become aware that we have collected personal information about a child under the age of 13, that information will be immediately deleted from our database.

. . .

The amended COPPA rules effective on July 1, 2013 apply to operators of websites and mobile apps that are directed at children under 13 that collect, use or disclose personal information from children or to operators that have actual knowledge that they are collecting personal information from users of sites or apps directed to children.  The existing obligation requiring parental consent before collecting personal information from children has been expanded to include persistent identifiers that can enable operators and third parties to recognize users.

. . .

1        In response to the new COPPA rules effective on July 1, 2013 InMobi is

2   continuing to ensure that we do not collect and use information from children's

3   sites for behavioral advertising (often referred to as interest based advertising).

4   We will continue to only use any data in the manner that COPPA prescribes.  We

5   have identified all existing publisher sites and apps directed to children to ensure

6   we are in full compliance with the new COPPA rules and from 30 June, 2013 shall

7   ensure that new and existing publishers are required to notify InMobi of any new

8   sites or app accounts that are directed at children to ensure we continue to comply

9   with the COPPA rules.

10       44.    Despite the representations described in Paragraphs 42-43, Defendant neither

11   implemented adequate privacy controls to ensure its compliance with COPPA nor tested that the

12   controls that it had implemented functioned as intended.  As a result, for over two years, until

13   October 2015, Defendant knowingly collected and used personal information – including unique

14   device identifiers, geolocation information, and BSSIDs used to infer location (as described in

15   Paragraphs 22-27) – from thousands of applications that had indicated to Defendant that they

16   were directed to children.

17       45.    Defendant used this personal information to track children's locations and serve

18   interest-based, behavioral advertising, including through the "Now," "Conditional," and

19   "Psychographic" geo-targeting products described in Paragraphs 12-15.

20       46.    Collectively, hundreds of millions of consumers have downloaded the thousands

21   of child-directed applications from which Defendant collected and used personal information.

22   Defendant collected such personal information each time an application made an ad request to

23   their network – typically every 30 seconds when an application is in use.

24       47.    Defendant's online notice of its information practices did not clearly, completely,

25   or accurately disclose all of Defendant's information collection and use practices for children, as

26   required by the Rule.

27       48.    Defendant did not provide parents with a direct notice of its information practices

28   prior to collecting and using children's personal information.

COMPLAINT                    12              Case No. 3:16-cv-3474

49.     Defendant did not obtain verifiable consent from parents prior to collecting and using children's personal information.

50.     Defendant knowingly collected and used personal information from thousands of child-directed applications in violation of the COPPA Rule.

## DEFENDANT'S VIOLATIONS OF THE FTC ACT

### COUNT I

51.     Through the means described in Paragraphs 28, 30, and 32, Defendant represented, expressly or by implication, that it tracked the consumer's location and served geo-targeted ads only if the application developer and consumer had provided access to the Android and iOS location APIs.

52.     In truth and in fact, as set forth in Paragraphs 22-27, Defendant did not track the consumer's location and serve geo-targeted ads only if the application developer and the consumer had provided access to the Android or iOS location APIs.  Instead, Defendant tracked the consumer's location and served geo-targeted ads by collecting BSSID and other information related to the WiFi network to which a consumer's device was connected or in-range, even if the consumer had not provided access to the location APIs.  Therefore, the representation set forth in Paragraph 51 was false or misleading and constituted a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT II

53.     Through the means described in Paragraph 34, Defendant represented, expressly or by implication, that it tracked the consumer's location and served geo-targeted ads only if the consumer had provided opt-in consent.

54.     In truth and in fact, as set forth in Paragraphs 22-27, Defendant did not track the consumer's location and serve geo-targeted ads only if the consumer had provided opt-in consent. Instead, Defendant tracked the consumer's location and served geo-targeted ads by collecting BSSID and other information related to the WiFi network to which a consumer's device was connected or in-range, even if the consumer had not provided opt-in consent.  Therefore, the representation set forth in Paragraph 53 was false or misleading and constituted a deceptive act or

practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III**

55.     Through the means described in Paragraphs 42-43, Defendant represented, expressly or by implication, that it did not collect or use personal information from applications directed to children.

56.     In truth and in fact, as set forth in Paragraphs 41 and 44-46, Defendant collected and used personal information from applications directed to children.  Therefore, the representation set forth in Paragraph 55 was false or misleading and constituted a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**DEFENDANT'S VIOLATION OF THE COPPA RULE**

**COUNT IV**

57.     In numerous instances, in connection with operating its mobile advertising network, Defendant collected and used, with actual knowledge, personal information from Web sites or online services directed to children.  Pursuant to the COPPA Rule, 16 C.F.R. § 312.2, a Web site or online service shall be deemed directed to children when it has actual knowledge that it is collecting personal information directly from users of another Web site or online service directed to children.  Therefore, Defendant has operated a Web site or online service directed to children, and has failed to: (1) provide sufficient notice on its Web site or online services of the information it collects online from children and how it uses such information, among other required content; (2) provide direct notice to parents of the information Defendant collects online from children and how it uses such information, among other required content; and (3) obtain verifiable parental consent before any collection or use of personal information from children.

58.     Defendant is an "operator" as defined by the COPPA Rule, 16 C.F.R. § 312.2.

59.     Through the means described in Paragraphs 41 through 50 above, Defendant violated:

a.     Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d), which requires an operator to provide sufficient notice on its Web site or online services of the information it collects online from children, how it uses such

information, and its disclosure practices for such information, among other required content;

b.   Section 312.4(b) of the Rule, 16 C.F.R. § 312.4(b), which requires an operator to provide direct notice to parents of the information Defendant collects online from children, how it uses such information, and its disclosure practices for such information, among other required content; and

c.   Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1), which requires an operator to obtain verifiable parental consent before any collection, use, and/or disclosure of personal information from children.

60.   Defendant's acts or practices, as described in Paragraph 57 above, violated the COPPA Rule, 16 C.F.R. Part 312.

61.   Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## THE COURT'S POWER TO GRANT RELIEF

62.   Defendant violated the Rule as described above with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

63.   Each collection or use of a child's personal information in which Defendant violated the Rule in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

64.   Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and Section 1.98(d) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of not more than $16,000 for each such violation of the Rule on or after February 10, 2009.

65.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant

1    injunctive and such other relief as the Court may deem appropriate to halt and redress violations

2    of any provision of law enforced by the FTC.

3                                                    **PRAYER**

4         WHEREFORE, Plaintiff United States of America, pursuant to Sections 5(a)(1),

5    5(m)(1)(A), 13(b) and 16(a) of the FTC Act, 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), and

6    56(a), and the Court's own equitable powers, requests that the Court:

7         (1)    Enter a permanent injunction to prevent future violations of the FTC Act by

8    Defendant with respect to the privacy of consumers' personal information;

9         (2)    Enter a permanent injunction to prevent future violations of the FTC Act and the

10   COPPA Rule by Defendant;

11        (3)    Award Plaintiff monetary civil penalties from Defendant for each violation of the

12   COPPA Rule alleged in this Complaint; and

13        (4)    Award such other and additional relief as the Court may determine to be just and

14   proper.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Dated:  June 22, 2016                    Respectfully submitted,

**FOR THE FEDERAL TRADE**          **FOR PLAINTIFF**
**COMMISSION:**                    **THE UNITED STATES OF**
                                   **AMERICA:**


MANEESHA MITHAL                    BENJAMIN C. MIZER
Associate Director                 Principal Deputy Assistant
Division of Privacy and Identity   Attorney General
Protection                         Civil Division

MARK EICHORN                       JONATHAN F. OLIN
Assistant Director                 Deputy Assistant Attorney General
Division of Privacy and Identity
Protection                         MICHAEL S. BLUME
                                   Director
NITHAN SANNAPPA                    Consumer Protection Branch
Attorney
Division of Privacy and Identity   ANDREW E. CLARK
Protection                         Assistant Director
Federal Trade Commission
600 Pennsylvania Avenue, N.W.       /s/ Jacqueline Blaesi-Freed
(202) 326-3185 (voice)             JACQUELINE BLAESI-FREED
(202) 326-3062 (fax)               Trial Attorney
                                   Consumer Protection Branch
JACQUELINE CONNOR                  U.S. Department of Justice
Attorney                           P.O. Box 386
Division of Privacy and Identity   Washington, DC  20044
Protection                         (202) 353-2809
Federal Trade Commission           jacqueline.m.blaesi-freed@usdoj.gov
600 Pennsylvania Avenue, N.W.
(202) 326-2844 (voice)
(202) 326-3062 (fax)